UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| DALLAS MURPHY, | CIVIL ACTION NO. 5:21-282-KKC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| NATIONWIDE MUTUAL INSURANCE COMPANY, NEXT INSURANCE US COMPANY, and GEICO GENERAL INSURANCE COMPANY | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motions for summary judgment filed by defendants Nationwide and Next Insurance (DE 21, 28). For the following reasons, the Court will grant summary judgment for defendant Next Insurance and will deny Nationwide's motion.

Plaintiff Dallas Murphy was involved in a couple of vehicle wrecks in 2020. The first occurred on June 11, 2020; the second occurred on September 18, 2020. (DE 1-1, 1-2, State Court Complaints.) He filed two complaints in state court against various insurance companies seeking insurance coverage to cover his damages in both wrecks. The state court consolidated the two actions, and then the defendant insurance companies removed the consolidated actions to this Court. There is no dispute that this Court has diversity jurisdiction over the consolidated actions pursuant to 28 U.S.C. § 1332(a)(1).

The motions before the Court involve only the wreck that occurred on June 11, 2020. The issue presented by both motions is which, if any, of the three insurance company defendants are the "primary insurer" and which are the "excess insurers." "When one insurance policy is

'primary' and the other policy is 'excess,' the primary insurer pays for damages up to the limits of its policy; when that policy is exhausted, the excess insurer covers any remaining damages up to the limits of its policy." *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 346 (Colo. 1997).

Murphy alleges that the wreck was caused by the driver of a second vehicle, Kathryn Lakes Fielder. (DE 1-1, Complaint, ¶ 8.) Plaintiff Murphy was driving a 2008 Toyota Tundra pickup truck. He did not own the truck. Joseph T. Walker did. (DE 20, Stipulations ¶ 3.) Walker and Fielder and their vehicles were both insured by GEICO with separate policies that limited payout for liability and underinsured motorist (UIM) coverage to $25,000 per person. (DE 20-2, 20-3.)

Pursuant to Fielder's policy, GEICO paid Murphy the $25,000 policy limit in liability coverage. (DE 20, Stipulations ¶ 11.) Pursuant to Walker's policy, GEICO paid Murphy the $25,000 policy limit in UIM benefits. (DE 20, Stipulations ¶ 11.) Murphy, however, claims damages exceeding the amounts he received from the Walker and Fielder GEICO policies.

Thus, Murphy is asserting claims for additional UIM coverage against three separate policies issued to him and his wife by three different insurers: defendants GEICO, Next Insurance, and Nationwide. The issue here is which, if any, of the insurance policies is primary.

The following chart summarizes who and which vehicles are insured under each policy and also the policy provisions relevant to whether each policy is primary or excess. Each of these policies explicitly states that it provides only excess insurance in the circumstances of the June 2020 wreck. The Court has marked in bold these explicit provisions.

| Insurer | Insured | Vehicle(s) Covered | Relevant Policy Provisions |
|---|---|---|---|
| Next Insurance | Dallas and Cheryl Murphy (DE 20-4, Next Policy at CM-ECF p. 1.) | • Walker's truck<br>• Ford F-350<br>• Ford F-250<br><br>(DE 20-4, Next Policy at CM-ECF p. 13, 18, 20.) | • For any covered "auto" you own, this Coverage Form provides primary insurance. **For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. (DE 20-4, Next Policy at CM-ECF p. 30.)**<br>• When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis. **(DE 20-4, Next Policy at CM-ECF p. 30.)** |
| GEICO | Dallas and Cheryl Murphy (DE 20-5, GEICO Policy at CM-ECF p. 2.) | • Hyundai Accent<br>• Nissan Altima<br><br>(DE 20-5, GEICO Policy at CM-ECF p. 2.) | • **When an insured occupies an auto not described in this policy, this insurance is excess over any other similar insurance available to the insured and the insurance which applies to the occupied auto is primary. . .** If the insured has other insurance against a loss covered by the underinsured motorist provisions of this amendment, we will not be liable for more than our pro-rata share of the total coverage available.<br>(DE 20-5, GEICO Policy at CM-ECF p. 31.) |
| Nationwide | Dallas and Cheryl Murphy (DE 20-6, Nationwide Policy at CM-ECF p. 7.) | • Nissan Altima<br>• Ford F-250<br><br>(DE 20-6, Nationwide Policy at CM-ECF p. 7.) | • If there is other applicable insurance similar to the insurance provided by this endorsement, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total loss of all applicable limits.<br>• **However, any insurance that we provide with respect to a vehicle. . . You do not own . . . shall be excess over any other collectible insurance** similar to the insurance provided by this endorsement.<br>(DE 20-6, Nationwide Policy at CM-ECF p. 53.) |

In its motion, Nationwide points to two provisions of the Next Insurance policy that it argues render Next Insurance the primary UIM insurer despite the provisions set forth in the chart above. (DE 21, Mem. at 3.) The two provisions are found in the Kentucky endorsement regarding UIM coverage and provide as follows:

    a.    The reference to "other collectible insurance" applies only to other collectible underinsured motorist insurance.

3

> b. Any insurance we provide with respect to a vehicle owned by the Named Insured . . . that is not a covered auto for Underinsured Motorists Coverage under this Coverage Form, shall be excess over any other collectible underinsured motorist insurance providing coverage on a primary basis.

(DE 20-4, Next Policy at CM-ECF pp. 53-54.)

The Kentucky endorsement specifically provides that the following provisions are "addition[s]" to the UIM coverage. The provisions are to be added to the UIM coverage provisions; they do not replace any provision of the UIM coverage. Subsection (a) merely makes clear that the reference to "other collectible insurance" in the following provision (set forth in the chart above) refers to "other collectible *underinsured motorist* insurance":

> For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

Thus, subsection (a) does not render Next Insurance the primary UIM insurer for the June 2020 accident.

Subsection (b) is inapplicable to the June 2020 accident because it applies to any insurance that the policy provides "with respect to a **vehicle owned by the Named Insured** . . . **that is not a covered auto** for underinsured motorist coverage." In the June 2020 accident, Murphy (the named insured) was not in a vehicle he owned. He was in the truck owned by Walker. And the Next Insurance policy explicitly provided, "For any covered 'auto' **you don't own**, the insurance provided by this form is *excess over any other collectible [UIM] insurance*." Nothing in the Kentucky endorsement changed that.

Nationwide also argues that, despite that explicit provision, Kentucky law renders Next Insurance the primary insurer on the June 2020 wreck because Next Insurance is the only insurer out of the three defendant insurers that insures the vehicle involved in the wreck (Walker's

truck). In support of that assertion, it cites *Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803 (Ky. 2010) and *Countryway Ins. Co. v. United Fin. Cas. Ins. Co.*, 496 S.W.3d 424 (Ky. 2016).

Those cases do not apply here, however. They address the situation where the only two insurers with coverage that extended to a particular wreck both claimed to be excess insurers. Neither claimed to be primary. *Shelter* involved two competing liability insurers. *Countryway* involved two competing uninsured motorist (UM) insurers. In *Shelter,* the Kentucky Supreme Court determined both insurers could not be excess insurers; one or both had to be primary. *Shelter*, 326 S.W.3d at 806. This is because, logically, in order for any insurer to be excess, there has to first be a primary insurer that pays its full policy limits. *Id.* at 807.

In *Shelter*, the at-fault driver was driving a car owned by his parents at the time he caused a wreck. One insurer insured the non-owner driver, and a different insurer insured the parents (the vehicle owners) and the vehicle. Both insurance policies provided that the liability coverage they provided was excess in this situation. The court determined that, regardless of those provisions, "where both the vehicle owner and non-owner driver are separately insured, the vehicle owner's insurance shall be primary." *Id.* at 811.

*Countryway* reached a similar conclusion with regard to two competing insurers offering UM coverage, where the at-fault driver had no insurance and the faultless driver's passenger was injured. The faultless driver's insurance provided UM coverage for his passenger as did the passenger's personal vehicle insurance. Both policies provided they were excess insurers. In line with *Shelter*, the court determined that, "where both the vehicle owner and a non-owner passenger are separately insured with UM coverage, the vehicle owner's coverage shall be primary." 496 S.W.3d at 435.

In both *Shelter* and *Countryway*, no insurance policies provided they were primary in the circumstances at issue. Thus, the court developed bright-line rules that would apply despite the policy provisions to appoint at least one insurer as primary. Here, however, GEICO has already paid Murphy its UIM policy limits under Walker's policy. (DE 20, Stipulations ¶¶ 4, 11.) Thus, there is no need for this Court to appoint one of the three named defendants as a primary insurer. Neither *Shelter* nor *Countryway* mandates that the Court ignore the provisions of the insurance policies issued by the three named defendants in order to name any of them as primary insurers in this situation.

In its response brief (DE 29), Nationwide no longer focuses on *Shelter* or *Countryway*. Instead, it argues that Next Insurance is the primary UIM insurer because it accepted a premium for its UIM coverage. (DE 29, Response at 1-2.) It cites no authority for that argument. Further, all of the insurers at issue provided UIM coverage in exchange for a premium. Finally, this argument continues to ignore that GEICO has already paid the UIM policy coverage limits on Walker's policy. This means the Court is not required to ignore the provision in the Next Insurance policy set forth in the chart above that explicitly provides that Next Insurance is an excess insurer because Murphy, a named insured, was driving at the time of the wreck an auto he did not own that was covered under the insurance policy. (DE 20-4, Next Policy at CM-ECF p. 30.)

All three insurers seem to agree that, if they are determined to be an excess insurer, they must pay a portion of Murphy's remaining damages not covered by the amounts previously paid by GEICO pursuant to the Fielder liability coverage and Walker UIM coverage. The portion of the remaining uncovered damages that each insurer must pay is equal to the following fraction:

$$\frac{\text{The particular insurer's UIM per-person limits}}{\text{The total of the UIM per-person limits on all three policies}}$$

For this reason, the Court hereby ORDERS as follows:

1) Nationwide's motion for summary judgment (DE 21) is DENIED;

2) Next Insurance's motion for summary judgment (DE 28) is GRANTED, and the Court hereby ADJUDGES as follows:

   a. The UIM coverage in the insurance policies issued by Next Insurance, Nationwide, and Geico are excess; and

   b. The portion of Murphy's remaining uncovered damages that each of these three insurers must pay is equal to the following fraction:

$$\frac{\text{The particular insurer's UIM per-person limits}}{\text{The total of the UIM per-person limits on all three policies}}$$

This 20th day of June, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY